IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE

| | |
|---|---|
| ORGUNA SANDERS, | ) |
| | ) |
| Plaintiff | ) 1:22-CV-00355-RAL |
| | ) |
| vs. | ) RICHARD A. LANZILLO |
| | ) Chief United States Magistrate Judge |
| CITY OF ERIE, DANIEL SPIZARNY, | ) |
| CHIEF OF POLICE FOR CITY OF ERIE; | ) |
| SUZANNE C. MACK, DISTRICT | ) |
| MAGISTRATE JUDGE; NICHOLAS A. | ) CONSOLIDATED MEMORANDUM |
| MASKERY, DISTRICT ATTORNEY; | ) OPINION ON DEFENDANTS' MOTIONS |
| JEREMY C. LIGHTNER, DISTRICT | ) TO DISMISS |
| ATTORNEY; K.M. MULLANEY, ERIE | ) |
| POLICE DEPT PTLM; AND JOSEPH | ) Re: |
| SCHEMBER, MAYOR OF THE CITY OF | ) ECF No. 62 |
| ERIE, | ) ECF No. 68 |
| | ) ECF No. 84 |
| Defendants | ) |
| | ) |

Plaintiff Orguna Sanders ("Sanders"), a Pennsylvania state inmate, brings this *pro se* action against the City of Erie, its Mayor, Joseph Schember, its Chief of Police, Daniel Spizarny, Erie police officer K.M. Mullaney (collectively, "Erie Defendants"), District Magistrate Judge Suzanne C. Mack ("Judge Mack"), and two Erie County Assistant District Attorneys, Jeremy C. Lightner and Nicholas A. Maskery (collectively "ADA Defendants"). Sanders asserts claims for false arrest, false imprisonment, and malicious prosecution against the Defendants under 42 U.S.C. § 1983 and Pennsylvania state law. Judge Mack, the Erie Defendants, and the ADA Defendants have separately moved to dismiss Sanders' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF Nos. 62 (Judge Mack), 68 (Erie Defendants), and 84 (ADA Defendants). For the reasons set forth in this Memorandum Opinion, Judge Mack and the ADA Defendants' motions will be GRANTED, and the Erie Defendants motion will be GRANTED as to the City of Erie, Mayor Schember, and Chief Spizarny and DENIED as to Officer Mullaney.

## I.    Relevant Procedural History

Sanders' Amended Complaint (ECF No. 43) is the operative pleading before the Court. Each group of Defendants has filed a supporting brief.  *See* ECF Nos. 63 (Judge Mack), 69 (Erie Defendants), and 85 (ADA Defendants).  Sanders has filed a brief in opposition to the ADA Defendants' motion (ECF No. 104), but he has not responded to the Erie Defendants or Judge Mack's motion despite being ordered to do so. *See* ECF No. 103.[1]

## II.    Scope of the Record

When ruling upon a motion to dismiss pursuant to Rule 12(b)(6), the court must "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Thus, "the court may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, such as a document that is integral to or explicitly relied upon in the complaint." *Jones v. Middletown Twp.*, 253 Fed. Appx. 184, 187 (3d Cir. 2007) (citing *In re Rockefeller Center Properties, Inc. Securities Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)). Such materials also include "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). This is because "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice ... and

---

[1] Although Sanders' "Motion of Opposition to Defendant's Motion to Dismiss" referenced all three motions to dismiss, it responded substantively only to the ADA Defendants' motion. *See* ECF No. 103. Sanders' response does not even mention the Erie Defendants or Judge Mack.

has relied upon [those] documents in framing the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2004). (internal quotation marks, alteration, and citation omitted).

### III.    Material Facts and Claims

The following facts are taken from Sanders' Amended Complaint and public court records that Sanders attached or referenced in his pleadings.

On March 19, 2021, Sanders was charged in the Court of Common Pleas of Erie County at docket no. 1206 of 2021 ("1206" Action") with attempted homicide, aggravated assault, aggravated assault with a deadly weapon, persons not to possess a firearm, firearms not to be carried without a license, possession of a weapon, simple assault, and recklessly endangering another person. All charges in the 1206 Action arose out of his shooting of an individual named Jonathan McClendon. Sanders' bail was initially set at $200,000 on March 19, 2021. On May 17, 2021, Judge Mack reduced Sanders' bond in the 1206 Action to $100,000, which Sanders posted on May 20, 2021.

While Sanders was released on bond in the 1206 Action, he incurred new charges in two separate criminal matters. First, on September 20, 2021, Sanders was charged at Erie County Common Pleas Court docket number 306-2021 ("306 Action") with terroristic threats, harassment, and simple assault. A preliminary hearing on these charges was conducted on December 8, 2021, and all charges were bound over.

Then on October 8, 2021, Officer Mullaney swore out a criminal complaint charging Sanders with terroristic threats in violation of 18 Pa. C.S. § 2706(a)(1) and disorderly conduct in violation of 18 Pa. C.S. § 5503(a)(4). ECF 43-1. These charges followed an investigation by Officer Mullaney of a report that Sanders had threatened a thirteen-year-old girl outside her middle school in the City of Erie. The criminal complaint was initially docketed at no. 303-2021 ("303

Action").[2]  In the criminal complaint, Officer Mullaney attested that, "on 10/8/2021 at approx. 0830 hours in the area of the 600 block of Pennsylvania Avenue [Sanders] did knowingly threaten the victim with bodily harm.  [Sanders] knows the victim from previous criminal case(s) with EPD." ECF No. 39-1.  *Id.*  The criminal complaint, however, lacked a supporting affidavit of probable cause. ECF No. 43, ¶ 13.[3]  Judge Mack conducted a preliminary hearing on these charges on December 13, 2021.  The thirteen-year-old girl was the only witness to testify at the preliminary hearing.  *Id.*  She testified that Sanders approached her in a vehicle as she walked between a convenience store and her middle school and then threatened to kill her. At the conclusion of the preliminary hearing, Judge Mack bound over both charges for trial. ECF No. 39-2, p. 12.

The new charges against Sanders in the 306 Action and the 303 Action prompted the Commonwealth, acting through Defendant ADA Maskrey, to file a motion to revoke Sanders' bond in the 1206 Action.  ECF No. 43-2, pp. 1-3.  The Honorable John J. Mead of the Court of Common Pleas of Erie County conducted a hearing on the motion on January 31, 2022.  *Id.*, pp. 4-10. At the conclusion of the hearing, Judge Mead denied the Commonwealth's request for revocation of Sanders' bond, but he increased the amount of bond from $100,000 back to the original bond amount of $200,000.  *Id.*, p. 10.  Sanders failed to post the increased bond and was detained in the Erie County Prison pending trial in the 1206 Action. ECF No. 43, ¶ 20.

---

[2] The criminal action was later re-docketed in the Court of Common Pleas of Erie County at no 3152-2021.

[3] Sanders bases his allegation that the criminal complaint in the 303 Action was issued without a supporting affidavit of probable cause on a record transmittal letter he received from the Clerk of the Court of Common Pleas of Erie County. *See* ECF No. 43-1.  The record transmittal letter stated that "[a] affidavit of probable cause was not filed w/ our office re 3152-2021." *Id.*  It is unclear from this transmittal whether an affidavit of probable cause never existed, as Sanders alleges, or it simply was not included in the record forwarded from the Magisterial District Court to the Court of Common Pleas.  For purposes of the Defendants' motions to dismiss, the Court accepts as true Sanders' allegation that an affidavit of probable cause was not filed in support of the criminal complaint in the 303 Action.

4

The 306 Action, the 303 Action, and the 1206 Action each proceeded to a separate jury trial. On April 11, 2023, a jury found Sanders guilty on all charges in the 306 Action. CP-25-CR-0003050-2021 at 20. On January 24, 2023, a jury found Sanders guilty of all charges in the 1206 Action. CP-25-CR-0001206-2021 at 5. Sanders is currently serving a sentence of 240 months to 490 months incarceration based on his convictions in the 1206 Action. ECF No. 84-2, p.4. He was credited with 432 days for time served in pretrial detention. *Id*. On April 11, 2023, a jury acquitted Sanders on both charges in the 303 Action. ECF No. 43-2, pp. 12-14. Defendant ADA Lightner represented the Commonwealth in the 303 Action. *Id*., p. 12

Sanders alleges that Officer Mullaney initiated the charges against him in the 303 Action without probable cause, that Judge Mack approved and bound over those charges without probable cause, and that ADA Maskery and ADA Lightner wrongfully prosecuted him on those charges. *See* ECF No. 43, ¶¶ 12-36. He alleges that the conduct of these Defendants caused the increase in his bond from $100,000 to $200,000 in the 1206 Action and the loss of liberty pending sentencing when he was unable to post the increased bond amount. *Id*., ¶ 36. He further alleges "based on information and belief" that Mayor Schember, Chief Spizarny, and the City of Erie acted with deliberate indifference to Officer Mullaney's misconduct and generally tolerated abusive police practices. *Id*., ¶ 38. He claims that the Defendants' conduct violated his Fourth Amendment right against unlawful seizure and his Fifth and Fourteenth Amendment rights. He also claims that his unlawful detention violated his Eighth Amendment right against cruel and unusual punishment. Finally, he claims that all Defendants engaged in a civil conspiracy to violate his civil rights. *See Id*., ¶¶ 22-26, 36-37. He seeks compensatory and punitive damages and injunctive relief in the form of an order directing the removal of Judge Mack, Officer Mullaney, and ADAs Lightner and Maskery from their positions. *Id*., ¶¶ 40-43.

IV.    **Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the complaint and view them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). In deciding the motion, the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-36 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521,

531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Finally, because Sanders is proceeding *pro se*, the Court will hold his Amended Complaint to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the Court can reasonably read his *pro se* Amended Complaint to state a claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969). This leniency notwithstanding, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)).

V.    **Discussion**

A.    **Judge Mack is immune from Sanders' claims.**

Absolute immunity shields judges from civil suits for money damages arising from their judicial acts. *Stump v. Sparkman*, 435 U.S. 349, 359 (1978); *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3rd Cir. 2000); *Addlespurger v. Corbett*, 461 Fed. Appx. 82, 85 (3d Cir. 2012). "The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435, (1993). Judicial immunity can be overcome only if the judge's actions are "nonjudicial in nature, or where such actions, while judicial in nature, are taken in the complete absence of all jurisdiction." *Van Tassel v. Lawrence County Domestic Relations Section*, 659 F.Supp.2d 672, 695 (W.D. Pa. 2009)

(internal quotation omitted). Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. *See Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. *Pierson v. Ray,* 386 U.S., at 554 (holding that "immunity applies even when the judge is accused of acting maliciously and corruptly").

In the instant case, Sanders' allegations and the state court record confirm that Judge Mack acted in her judicial capacity in all actions challenged by Sanders, including her approval of the criminal complaint in the 303 Action, the issuance of the warrant for his arrest, and her finding of probable cause for the charges against him following the preliminary hearing. All her actions were indisputably within her jurisdiction as a Magisterial District Judge. *See Lee v. Emps. of Union Twp. Mun. Ct.*, 2018 WL 1535266, at *4 (D.N.J. Mar. 28, 2018) ("The warrant for Ms. Lee's arrest was issued by the judge in the judge's official capacity. The judge therefore is entitled to judicial immunity."); *Dennis v. Evans*, 2011 WL 900911, at *12 (M.D. Pa. Feb. 2, 2011), *report and recommendation adopted*, 2011 WL 901187 (M.D. Pa. Mar. 14, 2011) ("[T]he court finds as a Magisterial District Judge, defendant Whittaker clearly had jurisdiction to issue an arrest warrant for the plaintiff."). Sanders' assertion that Judge Mack "rubber stamped" the arrest warrant, *see* ECF No. 43-2, ¶ 15, is insufficient to evade Judge Mack's absolute judicial immunity.

To the extent Sanders asserts claims against Judge Mack in her official capacity, his claims fare no better. Although official capacity claims allow a civil rights plaintiff to pursue injunctive or declaratory relief against public officials, the relief sought must be prospective in nature. *See MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (holding that "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct

and cannot be retrospective...."). No prospective relief against Judge Mack is plausibly available to Sanders in this case as this Court has no authority (or basis) to order her removal as Sanders requests. And even if prospective relief were conceivably available, Sanders' claim would be barred by Eleventh Amendment immunity. *See Dettamanti v. Staffel*, 793 Fed. App'x. 583, 584 (9th Cir. 2020) (citing *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007) (state officials sued in their official capacities are entitled to Eleventh Amendment immunity)). All claims against Judge Mack will be dismissed with prejudice regardless of whether the claims are asserted against her in her individual or official capacity and regardless of the nature of the relief requested.[4]

### B. The Amended Complaint fails to state a claim against Mayor Schember and Chief Spizarny in their individual capacities.

Sanders asserts a claim of supervisory liability against Mayor Schember and Chief Spizarny. Specifically, he claims that "Schember and...[Spizarny] have displayed deliberate indifference towards their subordinate officers entrenched misbehaviors and conduct that amounts to an informal and unofficially adopted 'custom' in the City of Erie in areas of investigating, arresting, and in the 'issuance of process' towards those whom they come in contact with and their constitutionally protected rights!". ECF No. 43, ¶ 21. This assertion, however, is entirely conclusory and wholly unsupported by the factual allegations of Sanders' Amended Complaint.

Supervisory liability [under § 1983] cannot be based solely upon the doctrine of respondeat superior"; instead, "there must be affirmative conduct by the supervisor that played a role in the [subordinate's wrongful conduct.]" *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir.1990) (citing *Rizzo v. Goode,* 423 U.S. 362, 377 (1976)). Personal involvement can be shown through allegations of personal direction or actual knowledge of and acquiescence in the

---

[4] Because Judge Mack is immune from Sanders' suit, the Court need not reach her argument that his claims are barred by *Heck v. Humphrey,* 512 U.S. 477 (1994). The Court will address this argument in its discussion of the Erie Defendants' motion to dismiss, *infra*.

subordinate's conduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). "Allegations of participation or actual knowledge and acquiescence ... must be made with appropriate particularity." *Id.* This includes place and time allegations to support a plausible inference that the supervisor participated in or had knowledge of and acquiesced in the misconduct of his subordinate. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. A plaintiff's mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish a supervisor's personal involvement. *Id.*

Sanders' Amended Complaint includes no allegations of fact to support an inference that Mayor Schember or Chief Spizarny personally directed or had knowledge of any supposed deficiencies in Officer Mullaney's investigation of Sanders or his filing of charges against him. His assertions that they tolerated customs or adopted policies that facilitated police misconduct are pure conclusions of law and, as such, carry no weight in opposition to the Erie Defendants' motion.[5] *Twombly*, 550 U.S. at 555. Sanders' Amended Complaint therefore fails to state a claim against Mayor Schember and Chief Spizarny.

### C. The Amended Complaint fails to state a claim against the City of Erie and against Mayor Schember and Chief Spizarny in their official capacities.

The Amended Complaint similarly fails to state a § 1983 claim against the City of Erie and against Mayor Schember and Chief Spizarny in their official capacities. As the legal basis for this claim, Sanders relies upon *Monell v. Department of Social Services*, 436 U.S. 658 (1978). In *Monell*, the United States Supreme Court held that "a municipality may be liable under § 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those

---

[5] To the extent Sanders asserts his claims against Mayor Schember and Chief Spizarny in their official capacities, his claims are claims against the City of Erie and will be analyzed as such below. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (holding that a § 1983 suit against a municipal officer in his or her official capacity effectively a suit against the municipality that the officer represents).

whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible.'" *Curran v. Venango County*, 2023 WL 8439274, at *4 (W.D. Pa. Nov. 2, 2023) (quoting *Monell*, 436 U.S. at 694).

To state a *Monell* claim, the plaintiff must allege facts to support a finding that the defendant, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the plaintiff's] constitutional harm." *Id*. (quoting source omitted). A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1059 (3d Cir. 1991) (alteration in original) (quoting *Monell*, 436 U.S. at 690 (1978)). "A custom is an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 404 (1997); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) ("A custom ... must have the force of law by virtue of the persistent practices of state [or municipal] officials." (quotation omitted)). Where a plaintiff asserts a municipal policy or custom representing a failure to train its employees, the plaintiff must identify specific training not provided that could reasonably be expected to prevent the injury that occurred. *Joines v. Twp. of Ridley*, 229 Fed. App'x. 161 (3d Cir. 2007). Moreover, as with any theory of municipal liability, a plaintiff relying on an alleged failure to train employees, must show that the failure amounted to deliberate indifference to the rights of persons with whom the employees will come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To support an inference of deliberate indifference, the plaintiff typically must show that decision-makers knew that similar constitutional deprivations had previously occurred and were aware of ways to prevent them, "but either deliberately chose

11

not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction in

this regard." *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (emphasis omitted)

(quoting *Simmons*, 947 F.2d at 1064).

Sanders has failed to allege facts to support any of the essential elements of a *Monell* claim

against the City of Erie or against Mayor Schember or Chief Spizarny in their official capacities.

He has not alleged facts to support a pattern of illegal arrests, let alone facts to support an inference

that policymakers acquiesced in such misconduct. His claims against the City of Erie and against

Mayor Schember and Chief Spizarny in their official capacities will therefore be dismissed.

### D. The motion to dismiss the claims against Officer Mullaney will be denied.

### 1. The present record is insufficient to determine whether Officer Mullaney had probable cause for the charges when he submitted the criminal complaint in the 303 Action.

Sanders' Amended Complaint asserts false arrest, false imprisonment, and malicious

prosecution claims Officer Mullaney based on an alleged absence of probable cause to support the

charges Officer Mullaney initiated against him. The absence of probable cause is an essential

element of each claim. *See Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020); *Pinkney v.*

*Meadville*, Pennsylvania, 648 F. Supp. 3d 615, 633–34 (W.D. Pa. 2023), *aff'd*, 95 F.4th 743 (3d

Cir. 2024). Sanders' false arrest and false imprisonment claims fail if probable cause existed "as

to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42

F.3d 809, 819 (3d Cir. 1994) (citing *Edwards v. City of Philadelphia*, 860 F.2d 568, 575-76 (3d

Cir. 1988)). The existence of probable cause supporting one charge, however, does not

automatically defeat a Fourth Amendment malicious prosecution claim alleging the lack of

probable cause for another charge. *See Chiaverini v. City of Napoleon*, 602 U.S. 556, (2024); *see*

*also Johnson v. Knorr*, 477 F.3d 75, 83 (3d Cir. 2007) (holding that a finding of "probable cause

for the arrest of the plaintiff on any one charge" will not necessarily "insulate" a law enforcement officer from liability for malicious prosecution). Because the absence of probable cause as to any charge initiated by Officer Mullaney will satisfy this element of Sanders' malicious prosecution claim, the Court must examine on a charge-by-charge basis whether the facts and circumstances within Officer Mullaney's knowledge were sufficient in themselves to warrant a reasonable belief that Sanders committed each offense.

Under Pennsylvania law, a person commits the offense of "terroristic threats with the intent to terrorize another ... if the person communicates either directly or indirectly, the threat to (a) commit any crime of violence with the intent to terrorize another ..." 18 Pa. Cons. Stat. Ann. § 2706(a)(1). "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance, or alarm, or recklessly created a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 42 Pa. Cons. Stat. Ann. § 5503.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). "Probable cause is assessed based upon the 'totality-of-the-circumstances' available to the arresting officer." *Pinkney*, 648 F. Supp. 3d at 634 (citing *Harvard*, 973 F.3d at 200) (additional citation omitted). "Although the existence of probable cause in a § 1983 action is typically a question of fact, 'the district court may conclude in the appropriate case ... that probable cause did exist as a matter of law if the evidence, viewed most favorably to

Plaintiff, reasonably would not support a contrary factual finding.'" *Voorhis v. Ginkel*, 2024 WL

4267311, at *3 (W.D. Pa. Sept. 23, 2024) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d

Cir. 1997)). This assessment necessarily requires a proper record regarding the facts and

circumstances known to the officer at the time he or she initiated the arrest.

Here, the record is not sufficiently developed to determine whether the facts and

circumstances known to Officer Mullaney *at the time he filed the criminal complaint* in the 303

Action supported probable cause for the terroristic threats and disorderly conduct charges against

Sanders. Missing from the record is an affidavit of probable cause to support the charges of the

criminal complaint. Sanders alleges that Officer Mullaney did not submit an affidavit of probable

cause in support of the criminal complaint. Sanders bases this allegation on a transmittal letter he

received from the Clerk of the Court of Common Pleas of Erie County. *See* ECF No. 43-1. The

transmittal letter stated that "[a] affidavit of probable cause was not filed w/ our office re 3152-

2021." *Id.* It is unclear from this transmittal whether an affidavit of probable cause never existed,

as Sanders alleges, or it simply was not included in the record forwarded from the Magisterial

District Court to the Court of Common Pleas. For purposes of the Defendants' motions to dismiss,

the Court must accept as true Sanders' allegation that Officer Mullaney did not submit an affidavit

in support of the criminal complaint in the 303 Action.

Officer Mullaney's criminal complaint was nevertheless approved by Judge Mack, a

Magisterial District Judge of the Pennsylvania minor judiciary, and a warrant for Sanders' arrest

was thereafter issued. An arrest warrant issued by a judicial officer, however, "does not, in itself,

shelter an officer from liability for false arrest." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000)

(citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). "Rather, a plaintiff may succeed

in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a

14

preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.' " *Wilson*, 212 F.3d at 786-87. Thus, when an arrest is based on a valid warrant, courts conduct a two-pronged analysis to determine whether probable cause existed. *See Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017). They ask, "first, whether the officers, with at least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for the warrant, and second, whether those assertions or omissions were material, or necessary, to the finding of probable cause." *Id.* (citing *Wilson*, 212 F.3d at 786–87 (internal quotation marks and alteration omitted)).

Statements from an eyewitness or victim are "typically sufficient to establish probable cause in the absence of '[i]ndependent exculpatory evidence or substantial evidence of [a] witness's own unreliability that outweigh[s]' the probable cause that otherwise exists." *Cooper v. City of Philadelphia*, 2016 WL 210459, at *1 (3d Cir. Jan. 19, 2016). *See also Burton v. Ziegler*, 2024 WL 1346674, at *5 (W.D. Pa. Mar. 29, 2024); Pinkney, 648 F. Supp. 3d at 635. Police officers can "generally assume that victims are credible, because their motive is ostensibly concern for their or others' safety" and because "victims are presumed to have sufficient knowledge, given that the crime happened to them." *Collick v. William Paterson Univ.*, 2021 WL 2374388, at *7 (D.N.J. June 10, 2021) (citing *Easton v. City of Boulder*, 776 F.2d 1441, 1449–50 (10th Cir. 1985)). Because the standard for probable cause is relatively low, and the evaluation of a victim's statement is typically addressed in proceedings following an arrest, the reliability and foundational basis of a victim's statement are usually adequate to establish probable cause. *Wilson*, 212 F.3d at 793–95 (Garth, J., concurring).

After the filing of the criminal complaint, Judge Mack conducted a preliminary hearing on the charges and found that the Commonwealth's evidence, which consisted entirely of the child victim's testimony, *prima facia* supported each charge. This Court also finds that the child's testimony at the preliminary hearing supported probable cause for each charge. And this Court also recognizes that the information the child conveyed to Officer Mullaney during his investigation may have been materially the same as the information she later testified to during the preliminary hearing. But the record presently does not support such a finding, and, at this stage of the case, the Court is constrained by its standard of review to accept Sanders' factual allegations as true and draw all reasonable inferences from those facts in his favor. Accordingly, the Court must deny the Erie Defendants' motion to the extent that it seeks dismissal of claims against Officer Mullaney.

### 2. The present record is insufficient to determine whether Officer Mullaney is entitled to qualified immunity.

The current record is also insufficiently developed to dismiss Sanders' claims against Officer Mullaney based on qualified immunity. Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity defense is traditionally analyzed in two prongs: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, make out the violation of a constitutional or statutory right; and whether the right at issue was "clearly established" at the time of the challenged conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The two prongs to the qualified immunity inquiry need not be analyzed in sequential order; courts have discretion to decide which of the two prongs to tackle first. *Ashcroft v. al–Kidd*, 563 U.S. 731, 735

(2011); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "The burden of establishing qualified immunity falls to the official claiming it as a defense." *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011). *See also, Harris v. Kellogg, Brown & Root Servs., Inc.*, 2016 WL 4720058, at * 1 (W.D. Pa. Sept. 9, 2016) (noting that the defendant "has the burden of proof on its affirmative defense of qualified immunity"); *Pruchnic v. Wright*, 2016 WL 1267812, at *10 (W.D. Pa. Mar. 30, 2016) (same); *Figueroa v. Mazza*, 825 F.3d 89, 113 (2d Cir. 2016) (same).

In the context of a false arrest claim against a police officer, the officer is entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed" to charge and arrest the plaintiff "in light of clearly established law and the information the [arresting] officers possessed." *Blaylock v. City of Philadelphia*, 504 F.3d 405, 411 (3d Cir. 2007) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228–29 (1991) (additional citation omitted). This is a relatively light burden for Officer Mullaney to satisfy, but the current record is silent concerning what Officer Mullaney knew *when he swore out the criminal complaint* against Sanders. The Court does not presently have the benefit of Officer Mullaney's affidavit of probable cause, his police report, interview notes, or any other record to assess whether he had knowledge of facts to support a reasonable belief that probable cause existed to charge Sanders. As noted, without supporting evidence, the Court cannot assume that, prior to authoring the criminal complaint, Officer Mullaney received from the minor victim materially the same information that she would later convey in her testimony at the preliminary hearing. Accordingly, the Court is constrained to deny the motion to dismiss the claims against Officer Mullaney based on qualified immunity. Officer Mullaney may renew his qualified immunity defense by motion for summary judgment and based upon a more developed record.

**E. The claims against the ADA Defendants are barred by prosecutorial immunity.**

The doctrine of absolute immunity protects prosecutors from liability related to their official acts. *Imbler v. Pachtman*, 424 U.S. 409, 417–20 (1976). "More than a mere defense to liability, prosecutorial immunity embodies the right not to stand trial." *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (internal quotations and citations omitted). Under this doctrine, a prosecutor is absolutely immune from liability for money damages under § 1983 for acts "within the scope of [their] duties in initiating and pursuing a criminal prosecution." *Imbler*, 424 U.S. at 410. "Ultimately, whether a prosecutor is entitled to absolute immunity depends on whether she establishes that she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." *Yarris v. Cnty. of Del.*, 465 F.3d 129, 136 (3d Cir. 2006) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993)).

Sanders' allegations demonstrate that the ADA Defendants' actions in this case are protected by the doctrine of absolute prosecutorial immunity. Sanders alleges that Maskery and Lightener prosecuted him without probable cause. He challenges Maskery's representation of the Commonwealth during the preliminary hearing in the 303 Action and his filing of the motion to revoke his bond in the 1206 Action. He further challenges Lightner's representation of the Commonwealth at his trial in the 303 Action. The ADA Defendants' actions all fall within the scope of a prosecutor's duties while pursuing a criminal prosecution. *See Sealander v. Brague*, 2019 WL 5829373, at *6 (M.D. Pa. Nov. 7, 2019) ("[A] prosecutor is entitled to absolute immunity while performing his official duties as [an] officer of the court, even if, in the performance of those duties, he is motivated by a corrupt or illegal intention.") (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1221-22 (3d Cir. 1977) (internal quotations omitted)); *Douris v. Schweiker*, 229 F.Supp.2d 391, 399 (E.D. Pa. 2002) ("[P]rosecutors are absolutely immune in § 1983 actions for their

decisions to prosecute, and withholding exculpatory evidence is a quasi-judicial act protected by absolute immunity."). As such, they are protected by absolute prosecutorial immunity. *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992). The claims against the ADA Defendants will be dismissed with prejudice.

## F. *Heck v. Humphrey*, 512 U.S. 477 (1994) does not bar Sanders' claims against Officer Mullaney.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that: "to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck*, 512 U.S. at 486-87 (footnote and internal citation omitted). In other words, "a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). Here, the concerns underlying *Heck* do not apply because Sanders was acquitted of the two charges that Officer Mullaney initiated in the 303 Action.

The Erie Defendants nevertheless argue that *Heck* bars Sanders' claims because his successful prosecution of this civil action would imply the invalidity of Judge Mead's decision to increase Sanders' bond in the 1206 Action. The Erie Defendants rely on the Third Circuit's per curiam decision in *Giallorenzo v. Beaver Cnty.*, 241 Fed. Appx. 866, 867 (3d Cir. 2007) in support of this argument. *See* ECF No. 69, pp. 6-7. Their reliance is misplaced. In *Giallorenzo*, the plaintiff directly challenged the state court's revocation of his bond independent of any criminal prosecution in which he had been acquitted. *See Giallorenzo*, 241 Fed. Appx. at 677. Sanders

raises Judge Mead's decision to increase his bond in the 1206 Action and his resulting pretrial detention as one element of his damages. But this is not the exclusive basis or central focus of his claims. Sanders' success in this action would not imply the invalidity of Judge Mead's decision because that decision was made in a criminal proceeding distinct from the 303 Action in which he was acquitted. The Erie Defendants' logic is that because Judge Mead considered the yet unadjudicated charges in the 303 Action when he increased Sanders' bond in the 1206 Action, Sanders' success in this action would imply the invalidity of that bond determination. If that logic were to be adopted, *Heck* would entirely bar a false arrest or malicious prosecution claim in any case where the plaintiff was ultimately acquitted but previously denied bond during pretrial proceedings. This would be an absurd result. Bond determinations are based on a host of considerations independent of ultimate guilt or innocence or the merits of prosecution in general. Given this, the Court's decision in *Giallorenzo* should be understood as applying the *Heck* bar only to direct challenges to bond determinations that are distinct from an underlying action in which the plaintiff has been acquitted.[6] So construed, the *Giallorenzo* Court's application of the *Heck* bar does not extend to Sanders' claims in this case

VI.    **Conclusion**

For the reasons previously discussed, Judge Mack's motion to dismiss (ECF No. 62) and the ADA Defendants' motion to dismiss (ECF No. 84) will be granted and all claims against these Defendants will be dismissed with prejudice. Dismissal with prejudice as to these Defendants is warranted because Sanders has already attempted amendment and demonstrated that he is unable to allege facts to support his claims against them. Further amendment is also futile because the

---

[6] The Court may ultimately determine that *Heck* precludes Sanders from claiming damages for or otherwise raising his pretrial detention in the 1206 Action in support of his claims in this case. But this does not preclude his claim for damages arising from his prosecution in the 303 Action in which he was acquitted.

individual Defendants are protected by immunity.  The Erie Defendants' motion to dismiss (ECF No. 68) will be GRANTED as to the City of Erie, Mayor Schember, and Chief Spizarny. The claims against the City of Erie, Mayor Schember, and Chief Spizarny will also be dismissed with prejudice for the same reasons identified above. The Erie Defendants' motion to dismiss will be denied as to Officer Mullaney.

A separate Order will issue.

DATED this 12th day of November 2024.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE